153 So. 207

DIMMICK v. FIRST NAT. BANK OF MONTGOMERY et al.

6 Div. 432.

Supreme Court of Alabama.
March 1, 1934.

Davis & Curtis, of Jasper, for appellees.

Beddow, Ray & Jones, of Birmingham, for appellant.

BROWN, Justice.

This appeal is from a final decree of the circuit court, sitting in equity, ordering the sale of the mineral rights in a large body of land located in townships 12 and 13 in range 11, west of the Huntsville meridian in Alabama, consisting of 4,400 acres.

The bill avers that said mineral rights, and the rights incident thereto, "can not be equitably divided or partitioned among the joint owners thereof, the same being undeveloped mineral lands and the usual mineral and mining rights thereunto belonging as set out herein, and that by reason of the different locations of said land and the mineral carried thereunder, a division in kind cannot be equitably made among the joint owners, and that a sale of the same for division is necessary." The averments of the bill in

this respect were denied by the respondent, who holds a one-eighth interest therein, presenting a question of fact, with the burden of proof on the complainants. Sandlin v. Sherrill, 201 Ala. 692, 79 So. 264; Smith v. Witcher (Hicks v. Witcher), 180 Ala. 102, 60 So. 391; 47 C. J. page 458, § 476.

The evidence was taken before the register and commissioners of his appointment, on oral examination, on this issue of fact, and the contention of appellant is that the mineral rights involved are located in a "proven" or "known" coal field, and, when the evidence is viewed in the light of the presumption that partition in kind is feasible and should be made, the evidence falls short of supporting the averments of the bill and the conclusion of the trial court that the property cannot be equitably divided or partitioned in kind.

Appellees' contention, on the other hand, is that the mineral rights are not in a body; that they are scattered over twenty separate sections, covering an area extending from north to south over a distance of 8 miles, and from east to west 4 miles; that the minerals in the northern area are more accessible than in the southern area; that the coal seam dips to the south from 30 to 50 feet to the mile, and slightly to the east, and is near the surface in the northern area; that in the northern area the "drift system" of mining may be practiced, affording an inexpensive method of draining, while in the southern area the "shaft system" must be used, requiring the removal of surplus water by pumping; that most of the area is rough and rugged on the surface, affected with hills, hollows, and ravines and meandering streams that have cut away a part of the coal in some of the tracts; that some of the minerals are more accessible to means of transportation, and that, on account of the rugged topography, property not accessible to transportation would be rendered less valuable on account of the costs of providing means of transportation, and to divide the property into small blocks would render the blocks less valuable; that the coal seam is affected with "squeezes," "rolls," "horsebacks," and faults, and there is no way of ascertaining their definite location except by actual mining; and that the seam is thinner in the southern area.

▌▌ It is well settled that a joint owner, as a general rule, is entitled, as of right, to a partition in kind, and, where the property involved is a fee-simple title, a presumption of fact prevails, until removed by satisfactory evidence that partition in kind is feasible. Smith v. Smith, 216 Ala. 570, 114 So. 192;

Miles v. Miles, 211 Ala. 26, 99 So. 187; 47 C. J. page 457, § 472; Finch v. Smith, 146 Ala 644, 41 So. 819, 9 Ann. Cas. 1026; Donnor v. Quartermas, 90 Ala. 164, 8 So. 715, 19, 24 Am. St. Rep. 778.

The major purpose of the statute (Code 1923, § 9331) conferring on courts of equity jurisdiction to order the sale of property held by joint owners or tenants in common for division was to modify the then well-settled hard and fast rule recognized in Donnor v. Quartermas, supra, "that every co-tenant is entitled to demand a partition of the common property, although such partition may be inconvenient or injurious * * * or even ruinous." Finch v. Smith, supra; Wood et al. v. Barnett, 208 Ala. 295, 94 So. 338; Trucks v. Sessions et al., 189 Ala. 149, 66 So. 79; McMath v. De Bardelaben, 75 Ala. 68.

▌ However, the presumption that equitable partition in kind is feasible, in the absence of statute, does not seem to obtain as to mineral rights, and whether or not partition in kind may be had depends upon the facts of the particular case, with the burden of proof, of course, on the party affirming that a sale is necessary to an equitable division. Clark et al. v. Whitfield et al., 213 Ala. 441, 105 So. 200; Sheffield Coal & Iron Co. v. Alabama Fuel & Iron Co., 185 Ala. 50, 64 So. 67; Musgrove v. Aldridge, 205 Ala. 189, 87 So. 803; 47 C. J. page 447, § 443.

▌ After careful consideration of the evidence, we are unable to affirm that the trial court erred in his conclusion that the property cannot be equitably partitioned in kind. In addition to the elements of uncertainty enumerated in appellees' contention, some of the surface owned by third parties, as the evidence shows, is in cultivation and has been denuded of timber, essential to mining, and the incidental rights going with the mineral rights as alleged, about which no question has been made, involved water rights, rights of way, and the right to construct and maintain mining facilities, all together injecting into the situation such elements of uncertainty, defying partition in kind. Sheffield Coal & Iron Co. v. Alabama Fuel & Iron Co., supra; Musgrove v. Aldridge, supra.

It was intimated in argument that the purpose underlying the proceeding is to force a sale of the property, at this time when there is no market for it, in order to freeze out the respondent. A sufficient answer to this contention is that no such issue was presented by the pleadings and no evidence except that going to show that there is no demand.

for such property at this time, and the precatory provision in "Item Five" of Mr. Baldwin's will: "While the said trustees have, and shall have, the power to dispose of any of said trust estate, it is my desire that unless the holdings of my coal lands shall in their [the trustees] opinion be too burdensome to said estate, that such coal lands shall be held as a part of said estate, until development of neighboring lands, or market facilities shall give them a better value."

These "coal lands" were again referred to in item eleven.

██ However, the court has ample power and authority on the coming in of the report of the sale, on appropriate exceptions and proof, to protect the parties against any abuse of the power granted by the decree, and, if the property, when sold, sells for a price greatly disproportionate to its market value under normal conditions, the sale should not be confirmed.

We find no error in the record, and the decree of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.