**UNITED STATES of America,
Appellant, Cross-Appellee,**

v.

**Joseph C. EAVES et al., Appellees,
Cross-Appellants.**

**Nos. 73–1911, 73–1912.**

United States Court of Appeals,
Tenth Circuit.

June 19, 1974.

Libero Marinelli, Jr., Atty., Tax. Div., Dept. of Justice (Scott P. Crampton, Asst. Att. Gen., Meyer Rothwacks, and Michael L. Paup, Attys., Tax Div., Dept. of Justice; Victor R. Ortega, U. S. Atty., and Mark C. Meiering, Asst. U. S. Atty., of counsel, with him on the brief), for appellant, cross-appellee.

Kendall O. Schlenker, of Schlenker, Parker, Payne & Wellborn, Albuquerque, N. M., for appellees, cross-appellants.

Before HILL, SETH, and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This is an appeal and cross-appeal from the judgment of the district court ordering the sale of Joseph C. Eaves' undivided one-half interest as joint tenant in property which has been the residence of him and his wife, Mary Marie Eaves. The sale was ordered pursuant to 26 U.S.C. § 7403 to satisfy a now undisputed tax lien amounting to $128,118.68 against the property of Joseph C. Eaves. It has been resolved that the tax liabilities are those of Mr. Eaves alone, and for which his wife is in no way responsible. The United States contends on the appeal that the district court should have ordered the sale of the entire property with Mrs. Eaves to receive the value of her one-half interest from the proceeds. Mr. and Mrs. Eaves assert that Mrs. Eaves is entitled to a prior lien for payments which she made on the mortgage following a 1964 conveyance by which she purportedly gained absolute title to the property.

The material facts are largely undisputed. Mr. and Mrs. Eaves purchased the residence in 1962 for $48,000, taking title as joint tenants. The parties now agree that title is held in joint tenancy rather than by the community. By the terms of the purchase, Mr. and Mrs. Eaves were to make a downpayment of $10,000 with a like payment due in two years. They also agreed to assume the seller's mortgage held by the codefendant, Gulf Coast Investment Corporation. On October 12, 1964, by which time Mr. Eaves had become legally insolvent and his tax difficulties had become apparent, a conveyance was effected without consideration whereby Mr. and Mrs. Eaves deeded title to the residence to a trustee who then deeded it back to Mrs. Eaves as the sole owner. The district court determined the conveyance to be in fraud of the rights of the United States under New Mexico Stat.Ann. § 50–14–4, and set it aside. That action is not challenged on appeal. Since the 1964 conveyance Mrs. Eaves has apparently made the mortgage payments.

The district court's findings and conclusions as to the amount of the deficiency, the form of ownership of the residence, the priority of the mortgage held by Gulf Coast Investment Corporation, and the invalidity of the 1964 conveyance are not disputed. We are asked only to determine whether the court should have ordered the sale of the entire property rather than of Mr. Eaves' undivided one-half; also whether a prior lien in Mrs. Eaves should have been decreed for the mortgage payments made after the 1964 conveyance.

26 U.S.C. § 7403(a) allows the Attorney General to file a civil action to enforce a tax lien in favor of the United States, and to subject "any property, of whatever nature, of the delinquent, or in which he has *any right, title or interest*, to the payment of such tax or liability." (Emphasis added). Subsection (c) of that section then provides that after adjudicating the merits of the claim the district court "*may* decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." (Emphasis added).

The United States contends that while the court has some discretion under the statute to order or deny a foreclosure sale, if a sale is ordered it must be of the entire property and not simply the interest of the taxpayer. Although other Circuits have considered the meaning of section 7403 in somewhat related circumstances, we know of none which has confronted it in precisely the situation with which we are faced.

The Fifth Circuit evidently had the first opportunity to consider whether section 7403 enables the United States to force the sale of property to which the taxpayer does not hold absolute title. In Folsom v. United States, 306 F.2d 361 (5th Cir.), that court held that the United States could not compel the outright sale of real estate in which the taxpayer held only an undivided one-sixth interest. While noting that the United States could "obtain the last vestige of title and every right which such taxpayer owns," the court observed that the law does not authorize it to force a sale "of the property of other joint owners, deny them the right to seek a partition in kind, and to tax them with the costs incurred by the Government in pursuing the delinquent taxpayer."

Since the *Folsom* decision, other Circuits have considered the limits of the power conferred by section 7403 and have uniformly rejected the Fifth Circuit's position. The first such case and the one after which subsequent decisions have been patterned is United States v. Trilling, 328 F.2d 699 (7th Cir.). In that case the Seventh Circuit held that section 7403 authorized the forced sale of property, an interest in which the taxpayer held in joint tenancy, and also the assessment of the costs and expenses of sale according to the respective interests of the owners. *Trilling* has since been followed by the Fourth Circuit in Washington v. United States, 402 F.2d 3

(4th Cir.) (wife's inchoate dower interest); the Ninth Circuit in United States v. Overman, 424 F.2d 1142 (9th Cir.) (community property); and the Second Circuit in United States v. Kocher, 468 F.2d 503 (2d Cir.) (tenancy in common). Later developments in the Fifth Circuit cast some doubt on the continued validity of *Folsom* in that Circuit as well. See Broday v. United States, 455 F.2d 1097 (5th Cir.), holding that despite a Texas statute exempting community property from antenuptial debts, a lien would attach to the wife's interest in a community checking account for a tax deficiency assessed prior to her marriage.

To the extent necessary in this case we adopt the construction of section 7403 developed in United States v. Trilling, *supra*. However, in so doing we note that those cases dealt with the *limit* of authority conferred by section 7403. The issue before us is whether, acknowledging that the district court had authority to order the sale of Mrs. Eaves' interest in the residence, it was compelled by the statute to exercise the full measure of its authority. We do not believe it was.

Section 7403 has traditionally been interpreted as conferring flexibility and broad discretion upon the courts in fashioning a remedy thereunder. As the use of the term "may" in subsection (c) implies, this discretion and flexibility extends to the decision whether or not to order foreclosure once the validity of the lien has been established. United States v. Hershberger, 475 F.2d 677 (10th Cir.); United States v. Boyd, 246 F.2d 477 (5th Cir.). It has been said that Congress intended the court to "function with the full traditional flexibility of the Chancellor." United States v. Boyd, 246 F.2d 477 (5th Cir.); United States v. Overman, 424 F.2d 1142 (9th Cir.). In many respects we feel the equitable

considerations inherent in this case parallel those present in United States v. Hershberger, *supra*. In that case we held, partly in deference to the laws of Kansas, that a wife's undivided one-half interest in the homestead was immune from a foreclosure sale to satisfy a tax deficiency owed by the husband, and that so long as the wife continued to occupy the property as her home, the immunity extended even to foreclosure on the lien against the husband's undivided one-half interest.

■ In sum, despite the protestations of the United States, we do not believe that section 7403 makes foreclosure an "all or nothing" proposition. We believe it to be well established that the district court in its sound discretion could have ordered the outright sale of the Eaves' residence, but we express no opinion as to the division of costs. Likewise it could have refused to foreclose on the lien altogether. Instead it chose a course bracketed by these two alternatives. Given the flexibility conferred on it by section 7403 we do not believe the court abused its discretion in confining the sale to Mr. Eaves' undivided one-half interest. The trial court must direct and gear the remedies to the factual situation and legal relationships or interest in the property to best accomplish the statutory aims and the rights and equities of the owners.

■ Turning to the question of the mortgage payments made by Mrs. Eaves after the 1964 conveyance, we can find no basis in the record for a lien in her favor or any other form of special recognition. Mrs. Eaves' testimony shows only that since 1964 she has performed the task of making the monthly payment, but it does not disclose the source of the funds. The refusal to decree such a lien was justified.

The judgment is affirmed.